AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

NOV 1 9 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

One Black LG smart phone
IMEI No. 355266-08-295652-3
Seized as FP&F No. 2020250400017401 Line item 0003

Case No. **19MJ5162**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2, incorporated herein by reference

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Methamphetamine |

The application is based on these facts:

See attached Affidavit of Special Agent Carlos Delgado, Homeland Security Investigations

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

S.A. Carlos Delgado, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/19/19

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. Bernard G. Skomal, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One Black LG smart phone
> IMEI No. 355266-08-295652-3
> Seized as FP&F No. 2020250400017401 Line item 0003
> ("Target Device #2")

The **Target Device #2** is currently in the possession of the Homeland Security Investigations, 2255 Niels Bohr Ct, San Diego, California 92514.

## ATTACHMENT B-2

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 20, 2019 to October 20, 2019:

   a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

   b.    tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

   c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

   d.    tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

   e.    tending to identify the user of, or persons with control over or access to, the subject phone; or

   f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.



**AFFIDAVIT IN SUPPORT OF WARRANT**

I, Carlos Delgado, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      This affidavit supports an application for warrants to search the following electronic devices:

> One Black Motorola smart phone by Cricket
> IMEI No. 352168102967352
> Seized as FP&F No. 2020250400017401 Line item 0003
> (**"Target Device #1"**)

> One Black LG smart phone
> IMEI No. 355266-08-295652-3
> Seized as FP&F No. 2020250400017401 Line item 0003
> (**"Target Device #2"**)

(collectively, **"Target Devices"**) as described in Attachments A-1 and A-2 (incorporated herein by reference), and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960, and 963, as described in Attachments B-1 and B-2.

2.      The requested warrants relate to the investigation and prosecution of Asucena Sandoval-Maldonado ("Defendant") for importing approximately 29 kilograms (63.8 pounds) of methamphetamine from Mexico into the United States. *See U.S. v. Sandoval-Maldonado,* Case No. 19-mj-4609 (S.D. Cal.) at ECF No. 1 (Complaint). The Target Devices are currently in the evidence vault located at 9495 Customhouse Plaza, San Diego, CA 92154.

3.      The **Target Device #1** was seized from Defendant incident to her arrest for a violation of Title 21, United States Code, Sections 952 and 960, Importation of Methamphetamine, at the San Ysidro, California Port of Entry on October 20, 2019. **Target Device #2** was seized from Defendant's silver 2016 Nissan Sentra bearing California license plate 7SJZ635 at the time of her arrest.  Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 and B-2 (incorporated herein by reference.)

1  4.  The information contained in this affidavit is based upon my experience and
2  training, consultation with other federal, state, and local law enforcement agents. The
3  evidence and information contained herein was developed from interviews and my review
4  of documents and evidence related to this case. Because this affidavit is made for the
5  limited purpose of obtaining search warrants for the **Target Devices**, it does not contain
6  all of the information known by me or other federal agents regarding this investigation, but
7  only contains those facts believed to be necessary to establish probable cause. Dates, times
8  and amounts are approximate.

## EXPERIENCE AND TRAINING

10  5.  I am a Special Agent employed by the Department of Homeland Security
11  (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations
12  (HSI).  I have been employed as a Special Agent with HSI since October 2007.  I attended
13  and completed the Federal Law Enforcement Training Center, Criminal Investigator
14  Training Program, as well as the Immigration and Customs Enforcement, Special Agent
15  Training program. In May, 2003, I received a bachelor's degree in Administration of
16  Criminal Justice and a minor in Psychology from San Diego State University.

17  6.  I have received training in identifying various controlled substances (Title 21)
18  investigations.  I have spoken with other agents with extensive experience in controlled
19  substances investigations.  I have conducted investigations of criminal violations relating
20  to the smuggling and transportation of controlled substances. I have participated in the
21  arrests of several persons for controlled substance violations. I have interviewed and
22  assisted in interviews with the arrested persons and with their associates. Through these
23  interviews, I have gained a working knowledge and insight into the typical workings of
24  controlled substance traffickers and smugglers.

25  7.  In the course of my duties, I worked as the case agent, directed specific drug-
26  related investigations and interviewed defendants and witnesses relative to the illegal
27  trafficking of controlled substances.  Through my observations and these interviews, I
28  gained knowledge and insight into the normal operational habits of narcotics smugglers.

8.      I know based upon my training and experience and that of other law enforcement investigators with whom I have communicated, cell phones, computers and other electronic media are permanently possessed by individuals involved in smuggling illegal narcotics much in the same way a legitimate business will maintain records and tools of its trade.  These items are kept by individuals involved in smuggling illegal narcotics whether or not they are involved in or arranging for a criminal act at any given moment.

9.      Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.      Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b.      Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.      Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d.      Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e.      Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

f.      Drug smugglers therefore generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators.

10.     Based on my training and experience, including consultations with other law enforcement personnel, I know that drug traffickers commonly use electronic devices such as cellular telephones to store names, telephone numbers, records, drug ledgers, and other

3

information pertaining to drug trafficking activity. I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating narcotics conspiracies that searches of cellular/mobile telephones yields evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject phone; or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

11.    Based upon my training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs; use cellular telephones, emails, and text messages to facilitate drug activity. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of couriers to transport currency and proceeds, the use of third parties and nominees

4

to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs and drug proceeds, and the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds.

12.    I also know from training and experience that drug traffickers periodically change or "drop" their telephones and/or telephone numbers in an attempt to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in an effort to thwart law enforcement interception of communications.

13.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as methamphetamine. Typically, couriers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular and digital telephones.

14.    Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has

1  been utilized in connection with that telephone.

2  **FACTS SUPPORTING PROBABLE CAUSE**

3    15. On October 20, 2019, at approximately 3:05 a.m., Defendant, a United States

4  citizen, applied for admission to the United States at the San Ysidro, California Port of

5  Entry. Defendant was the driver of a 2016 Nissan Sentra (the "Vehicle") with two minor

6  children in the Vehicle with her.

7    16. As the Vehicle was in the pre-primary inspection area, Customs and Border

8  Protection Officer ("CBPO") Rios encountered Defendant and asked where she was going.

9  Defendant stated she was visiting family in Mexico and going home to East Los Angeles.

10  Defendant provided a California Identification card. Defendant further stated that she was

11  not bringing anything from Mexico and had nothing to declare. CBPO Rios inspected the

12  driver's side quarter panels of the Vehicle using a density buster reader and received a

13  higher-than-normal reading. CBPO Rios them removed the carpet that covered the quarter

14  panel and observed several vacuum-sealed packages. The Vehicle was sent to secondary.

15    17. In the secondary inspection area, a Z-portal X-ray revealed anomalies in the

16  Vehicle's quarter panels. Upon further inspection, 60 packages, weighing approximately

17  29 kilograms, were found in the Vehicle—34 in the quarter panels, 3 in the center console,

18  6 in the dashboard, 4 in the roof, and 13 inside the rear seats—and tested positive for the

19  properties of methamphetamine.

20    18. Officers seized the **Target Devices** incident to Defendant's arrest.[1] The

21  Defendant's personal belongings and **Target Devices** were placed inside a bag.  When I

22  asked the Defendant, who was in custody at the San Ysidro Port of Entry, who she trusted

23  to pick up her two minor children, the Defendant told me that she had received a call from

24  a Mexican number that she could use to get ahold of her youngest son's father to pick up

25

26  [1] On October 20, 2019, HSI agents manually reviewed the contents of Target Device #1. Nothing from the October 20, 2019 manual review is offered to support probable cause

27  in this application. I also declare that nothing from the prior search of Target Device #1 informs my decision to submit this affidavit to obtain a search warrant for Target Device

28  #1. I seek this affidavit independent of any information that was seen or reviewed (or not seen) in prior searches.

1    the minor children.  The Defendant stated that the Motorola phone (**Target Device #1**) was

2    her personal phone and provided a passcode to unlock the phone.  I was able to unlock

3    **Target Device #1** with the passcode Defendant provided.  The Defendant also provide the

4    code to unlock **Target Device #2** that was also found inside the Vehicle.  The Defendant

5    stated that **Target Device #2** was her older son's phone, and at that moment, she did not

6    remember which code belong to each Target Device.  When I attempted to unlock **Target**

7    **Device #2**, **Target Device #2** was out of battery.  Based on my training and experience, I

8    have learned that narcotics traffickers often require the use of one or more telephones to

9    negotiate times, places, schemes and manners for importing, possessing, concealing,

10   manufacturing, and distributing controlled substances and for arranging the disposition of

11   proceeds from the sale of controlled substances.  Accordingly, I believe there is probable

12   cause to search **Target Device #2**, which was seized incident to Defendant's arrest.

13            19.    After being advised of and waiving her rights under *Miranda*, Defendant

14   denied knowledge of the narcotics in the Vehicle. Defendant explained that the Vehicle

15   was registered to her father, but that she was the owner of the Vehicle and made the car

16   payments to the bank. Defendant stated that she went to Mexico to pick up property and a

17   cat that belonged to her sister-in-law, who had passed away recently. After arriving in

18   Mexico, Defendant was unable to get ahold of the person who had access to the property

19   and cat, so she went to visit a family friend, Vero. Once she arrived at Vero's place, the

20   group got ready and went to a holiday party. Defendant stated the Vehicle was parked on

21   the street, and she left her keys at Vero's house. Homeland Security Investigations agents

22   asked Defendant who could have concealed the drugs in her Vehicle, and Defendant did

23   not mention her boyfriend, Samuel Galvan, had access to the car. However, after agents

24   mentioned that her phone would likely be searched, Defendant stated that Galvan had

25   traveled with her to Mexico, had access to **Target Device #1**, and had access to the Vehicle.

26   Defendant explained that her and Sammy got in a fight when he wanted to stay and keep

27   drinking, so he did not return with her from Mexico.

28            20.    As part of my investigation, I have spoken with several of Defendant's family

7

1 members. Some family members have indicated that Galvan took the Vehicle while

2 Defendant was at the Halloween party on the night of her arrest, and the Vehicle was not

3 at Vero's house when Defendant returned from the Halloween party. Post-arrest, Defendant

4 did not state that Galvan took the Vehicle on the night of arrest.

5      21.    On October 21, 2019, Magistrate Judge Karen S. Crawford found probable

6 cause for a complaint charging Defendant with Importation of Methamphetamine, in

7 violation of Title 21, United States Code, Sections 952 and 960, in the Southern District of

8 California in case number 19-mj-4609-KSC. On November 14, 2019, Defendant waived

9 Indictment and was charged in a one-count Information with the same n case number 19-

10 CR-4583-WQH.

11      22.    Based upon my experience and investigation in this case, I believe that the

12 Defendant, as well as other persons, were involved in an ongoing conspiracy to import

13 methamphetamine or some other federally controlled substance into the United States. Based

14 on my experience investigating narcotics smugglers, I also believe that Defendant may have

15 used the Target Device to coordinate with co-conspirators regarding the importation of

16 methamphetamine or some other federally controlled substance into the United States.

17      23.    Accordingly, based upon my experience and training, consultation with other

18 law enforcement officers experienced in narcotics trafficking investigations, and all the

19 facts and opinions set forth in this affidavit, I believe that information relevant to the

20 narcotics trafficking activities of Defendant, such as telephone numbers, made and received

21 calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages,

22 pictures, audio files, videos, and other digital information are stored in the memory of the

23 **Target Devices**.

24      24.    Drug trafficking conspiracies require intricate planning and coordination. This

25 often occurs days, weeks, or even months prior to the actual importation of the drugs into

26 the United States. Co-conspirators communicate with one another in efforts to ensure

27 success in transporting their valuable cargo to its destination within the United States.

28 Given this, I request permission to search the Target Device for items listed in Attachments

B-1 and B-2 beginning on July 20, 2019, up to and including October 20, 2019.

## METHODOLOGY

25.    It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "airplane mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

26.    Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

1  review, and, consequently, may take weeks or months. The personnel conducting the

2  identification and extraction of data will complete the analysis within ninety (90) days,

3  absent further application to this court.

4  **CONCLUSION**

5      28.    Based on all of the facts and circumstances described above, there is probable

6  cause to conclude that Defendant used the **Target Devices** to facilitate violations of Title

7  21, United States Code, Sections 952, 960, and 963.

8      29.    Because the **Target Devices** were promptly seized during the investigation of

9  Defendant trafficking activities and have been securely stored, there is probable cause to

10 believe that evidence of illegal activities committed by Defendant continues to exist on the

11 **Target Devices**.

12     30.    WHEREFORE, I request that the court issue a warrant authorizing law

13 enforcement agents and/or other federal and state law enforcement officers to search the

14 item described in Attachments A-1 and A-2 and the seizure of items listed in Attachments

15 B-1 and B-2, using the methodology described above.

16 I swear the foregoing is true and correct to the best of my knowledge and belief.

17

18

19                       Carlos Delgado
                      HSI Special Agent

20

21 Subscribed and sworn to before me this ___19___ day of November, 2019.

22

23

24

25 _____
   Hon. Bernard G. Skomal

26 United States Magistrate Judge

27

28